Smith, J.
INTRODUCTION
The plaintiff, Albert L. O’Neil (Councilor O’Neil), an elected member of the Boston City Council, commenced this action asserting nine counts of defamation and libel against the defendants for allegedly false statements which the defendants made or published about the plaintiff.
Defendants Michelle Gilvey, a former employee of the City of Boston, along with defendants the Globe Newspaper Company (“Boston Globe”) and Adrian Walker, a reporter for the Boston Globe, bring this special motion to dismiss pursuant to G.L.c. 231, §59H (commonly referred to as the anti-SLAPP[2] statute).
The defendants contend that their statements regarding plaintiffs alleged sexual harassment were made while exercising their right to petition as protected in G.L.c. 231, §59H. Defendants Thomas Francis and Jacqueline Hoard bring a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), claiming that their statements to the President of Boston City Council were privileged, and thus cannot be considered libel. Councilor O’Neil does not oppose the motion ofWalker and the Boston Globe and thus their special motion to dismiss Count VII and Count IX of the complaint pursuant to G.L.c. 231, §59H is ALLOWED. For the foregoing reasons, defendant Gilvey’s special motion to dismiss Count I pursuant to G.L.c. 231, §59H is DENIED and defendants Francis and Hoard’s motion to dismiss Counts II and III of the complaint pursuant to Mass.R.Civ.P. 12(b)(6) is DENIED.
FACTS
As permitted by G.L.c. 231, §59H, the Court draws the following facts and any reasonable inferences therefrom from the pleadings and affidavits. In October 1991 defendant Gilvey began working at Boston City Hall as a program specialist for the Boston Fair Housing Commission. Gilvey alleges that beginning in 1992 Councilor O’Neil, a Boston City Councilor, made inappropriate sexual remarks and advances towards her. On November 30, 1994 Gilvey prepared a report containing allegations of sexual harassment against the plaintiff and submitted the report to the City of Boston Office of Affirmative Action, a unit within the City of Boston Human Resources Office. In response to this report the Director of the Affirmative Action Office, defendant Hoard, wrote a letter to the President of the City Council, James Kelly. The letter mentioned the allegations contained in Gilvey’s report. The letter also stated that Gilvey wanted an apology from Councilor O’Neil and assurance that the alleged conduct would not happen again. This letter acknowledged that the City Council is not covered by the City’s Anti-Harassment Policy, but stated that the Office of Human Resources has an obligation to assist in maintaining a harassment free, non-hostile work environment for its employees. Following this letter a meeting was held at Boston City Hall to discuss Gilvey’s complaint. Presiding over the meeting and presumably the person who called to meeting[3] was the President of the City Council, James Kelly. Attending this meeting were the plaintiff, defendant Gilvey, defendant Hoard and defendant Francis. At the meeting, Councilor O’Neil was directed to apologize to Gilvey for his harassive conduct, which he did with these words: “I apologize. I don’t know what for, but if I offended you I apologize.” At this meeting, Gilvey was satisfied and considered the matter resolved.
These allegations were reported in two major newspapers, the Boston Herald and the Boston Globe. A Globe article written by defendant Walker reported on the grievance against plaintiff, related the comments made by Councilor O’Neil and reported the statements and observations made by others who had been interviewed by the Globe regarding plaintiffs behavior. Councilor O’Neil denies all of Gilvey’s allegations of sexual harassment. Councilor O’Neil brought this suit against the defendants for libel and defamation.
DISCUSSION
I. Special Motion to Dismiss Pursuant to G.L.c. 231, §59H
The Massachusetts Anti-SLAPP Statute, G.L.c. 231, §59H, was passed to protect individual citizens from lawsuits designed to chill their right of petitioning and *238 speech. As the Supreme Judicial Court recently described:
The objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents’ exercise of rights of petitioning and speech. SLAPP suits target people for “reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations.”
Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161-62 (Mass. 1998) (citations omitted). The act itself broadly defines the right to petition as:
any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.
G.L.c. 231, §59H.
A. The Burden on the Moving Party under G.L.c. 231, §59H.
Under G.L.c. 231, §59H the moving party is required to make a prima facie showing that she is exercising her right to petition. Formerly this was all the showing the moving party needed to make to cause the burden of production to shift to the non-moving party (1) to show that the moving party’s exercise of her right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) caused actual injury to the nonmoving party. G.L.c. 231, §59H.[4] However, the Duracrajt court has increased the moving party’s burden of production.
The Duracrajt court addressed the question of whether the anti-SLAPP legislation was intended to authorize the dismissal of an otherwise valid claim. If the anti-SLAPP legislation did then it would impair the constitutionally protected right to petition a court or some other governmental body with such authority for redress of a grievance — an issue raised by Councilor O’Neil in this case. The Duracrajt court resolved this question by clarifying and sharpening the shifting burdens required by the Act, especially the burden of production upon the moving party. The new rule is as follows:
Because the Legislature intended to immunize parties from claims “based on” their petitioning activities, we adopt a construction of “based on” that would exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated. The special movant who “asserts” protection for its petitioning activities would have to make a threshold showing through the pleadings and affidavits that the claims against it are “based on” the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. Once the special movant so demonstrates, the burden shifts to the nonmoving party as provided in the anti-SLAPP statute. Such a showing by the special movant should serve to distinguish merit-less from meritorious claims, as was intended by the Legislature.
Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 167-68 (Mass. 1998) (citations omitted).
1. Right to Petition
Gilvey must initially show that her statements were made while exercising her right to petition. It is clear that the defendant has a legal right to seek relief from sexual harassment without fear of retaliation against employers who are subject to G.L.c. 151B. See G.L.c. 15 IB, §4(4). In this case, Gilvey, by lodging her grievance with the City of Boston used the only administrative avenue open to her to seek redress for her grievance. Thus, Gilvey filed a complaint regarding the alleged harassment with the City of Boston Office of Affirmative Action, a unit within the City of Boston Human Resources Office. This complaint was filed pursuant to the procedure outlined in the City of Boston’s Affirmative Action Plan.[5] While both parties agree that Councilor O’Neil is not subject to the Anti-Harassment Policy, this policy governs Gilvey’s employment and thus, she was correct to follow the procedure mandated by the Policy.
A party’s right to petition is defined in G.L.c. 231, §59H as including a variety of actions such as: “any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding.” Gilvey’s complaint to the City of Boston Office of Affirmative Action and its review by the Boston City Council constituted a petition as contemplated by G.L.c. 231, §59H. In addition, Gilvey’s report containing allegations of sexual harassment falls within the statute’s broad definition of the right to petition as the allegations are statements “reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding.” G.L.c. 231, §59H. Accordingly, Gilvey made a prima facie showing that in reporting sexual harassment she was exercising her right to petition under G.L.c. 231, §59H.
*239 2. Whether Plaintiffs Action is “Based on” the Petitioning Activities Alone
Second, Gilvey must show that Councilor O’Neil’s defamation law suit against her is “ ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Gilvey has not met this prong of her burden of production. The critical issue in the second prong is whether Councilor O’Neil’s defamation law suit has a substantial basis other than or in addition to the petitioning activity. The short answer is that in this case Councilor O’Neil’s defamation law suit does have a substantial basis in addition to the petitioning activity.
Councilor O’Neil is a public official and where the plaintiff is a public official, the plaintiff must prove that the defendant published the allegedly libelous statement with “actual malice,” that is, with knowledge that the statement was false or with reckless disregard for its falsity. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 725-26 (1964). Councilor O’Neil must prove actual malice by clear and convincing evidence. In his complaint, Councilor O’Neil alleged that Gilvey’s statements made during her petitioning activity were both false and made with malice. Gilvey’s statements made during her petitioning activity are not absolutely privileged.[6] See McDonald v. Smith, 472 U.S. 479, 484, 105 S.Ct. 2787 (1985) (“Nothing presented to us suggests that the Court’s decision not to recognize an ábsolute privilege in 1845 should be altered; we are not prepared to conclude, 140 years later, that the Framers of the First Amendment understood the right to petition to include an unqualified right to express damaging falsehoods in exercise of that right”). The McDonald Court found that “The right to petition [under the Petition Clause of the First Amendment] is guaranteed; the right to commit libel with impunity is not.” Id. at 485.
Councilor O’Neil’s allegations that Gilvey defamed him have sufficient merit to reach at least the summary judgment stage of litigation.[7] More importantly, these defamation claims would arise whether the statements were made in a petitioning context or some other. There can be no doubt that if Councilor O’Neil could prove to a jury with clear and convincing evidence that Gilvey made the same defamatory statements alleged in this case with actual malice in a context other than her petitioning activity, he would be entitled to whatever damages he could prove. It is not the petitioning but the defamation that drives Councilor O’Neil’s law suit. Thus, Councilor O’Neil’s law suit has a substantial basis in addition to Gilvey’s petitioning activities.
Since Gilvey has not met her burden of persuasion, there is no need to determine whether Councilor O’Neil met his burden.
II. The Motion to Dismiss of Defendants Thomas Francis and Jacqueline Hoard
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must take as true the allegations of the complaint, and must draw any inferences from those allegations in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991) and cases cited. The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A complaint is not subject to dismissal if it could support relief under any theory of law. Whitinsville Plaza v. Kotseas, 378 Mass. 85, 89 (1979).
In this case defendants Hoard and Francis claim that Councilor O’Neil cannot possibly prove a claim of libel because their December 23, 1994 letter sent to the President of the Boston Cily Council, James M. Kelly was privileged. Massachusetts recognizes a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest. Bratt v. International Business Machines Corp., 392 Mass. 508, 512-13 (1984); Retailers Commercial Agency, Inc., 342 Mass. 515, 520 (1961). Councilor O’Neil contends that this privilege does not apply between these parties because there is no employee/employer relationship. Assuming for the purposes of this motion, without deciding, that this conditional privilege applies to these defendants’ communication with James Kelly, President of the City Council, the application of this conditional privilege does not entitle these defendants to success on their motions to dismiss.
An employer has a conditional privilege to reveal defamatory information concerning an employee when the publication is reasonably necessary to serve the employer’s legitimate interest in the fitness of an employee to perform his or her job. Bratt v. International Business Machines Corp., 392 Mass. 508, 509 (1984). However, this privilege is conditional, not absolute, and if abused can be lost. Id. One way this conditional privilege can be lost is if a defendant publishes statements knowing them to be false. Tosti v. Ayik, 386 Mass. 721, 726 (1982). Another way a defendant in a libel case can lose a conditional privilege is through reckless “unnecessary, unreasonable or excessive publication.” Bratt v. International Business Machines Corp., 392 Mass. 508, 509 (1984), quoting Galvin v. New York, N.H. & H. R.R., 341 Mass. 293, 297-98 (1960). Thus, Councilor O’Neil could defeat this conditional privilege upon showing these defendants recklessly engaged in unnecessary, unreasonable or excessive publication of the defamatory statement or that these defendants published the statements known to be false. Because Councilor O’Neil’s Complaint alleges sufficient facts which, if *240 proven at trial, would overcome the defendant’s conditional privilege, plaintiffs Complaint cannot be dismissed for failure to state a claim upon which relief can be granted.
CONCLUSION
As Councilor O’Neil does not oppose the special motions to dismiss filed by defendant Walker and defendant Boston Globe, their special motions to dismiss pursuant to G.L.c. 231, §59H are granted. Because defendant Gilvey has failed to make a prima facie showing that Councilor O’Neil’s defamation lawsuit did not have a substantial basis other than or in addition to her petitioning activities the Court denies Gilvey’s special motion to dismiss pursuant to G.L.c. 231, §59H.
Defendants Hoard and Francis’ motion to dismiss pursuant to Mass.R.Civ.P 12(b)(6) is denied because there is a triable issue regarding the existence of and, if so, the application of a conditional privilege to the defendants’ communications with James Kelly, President of the Boston City Council.
ORDER
The Court hereby ORDERS as follows:
1. The special motion of defendants Adrian Walker and the Globe Newspaper Co. to dismiss pursuant to G.L.c. 231, §59H is ALLOWED. Judgment of dismissal shall enter in favor of defendants Adrian Walker and Globe Newspaper Co. on Counts VII and Count IX respectively of the Complaint.
2. The court further awards defendants Adrian Walker and Globe Newspaper Co. costs and reasonable attorneys fees as required by G.L.c. 231, §59H. Accordingly, these two defendants shall each submit affidavits regarding their attorneys fees and costs in 60 days.
3. The special motion of defendant Michelle Gilvey to dismiss pursuant to G.L.c. 231, §59H is DENIED.
4. It is further ORDERED that motion of defendants Thomas Francis and Jacqueline Hoard to dismiss pursuant to Mass.R.Civ.P 12(b)(6) is DENIED.

SLAPP stands for “Strategic Litigation Against Public Participation.”

Gilvey’s affidavit does not state who called the meeting although it is a fair inference that the meeting was called to order by the President of the City Council.

G. L. c. 231, §59H states in pertinent part:
In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party’s exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss. The court shall advance any such special motion so that it may be heard and determined as expeditiously as possible. The court shall grant such special motion, unless the party against whom such special motion is made shows . . . : (1) that the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) that the moving party’s acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

The Plan provides that if “a City of Boston employee feels that he or she is being harassed on the basis of.. . sex” then the employee “may either notify the immediate supervisor, department head or the Director of Affirmative Action of any incident which creates the basis from harassment.”

Because there is no employer-employee relationship between Gilvey and the City Council or Councilor O’Neil, the conditional privilege provided in that relationship does not apply here. See McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 235-36 (1984). It was not argued that Gilvey’s statements at the Boston City Council hearing were in some manner privileged. Whether any privilege exists has not yet been decided. See Mulgrew v. City of Taunton, 410 Mass. 631, 635 n8 (1991) (the court did “not reach the issue whether the proceedings before a city council or other local government entity are privileged, and if so, whether an absolute or conditional privilege applies”).

At a minimum, there are factual issues and state of mind issues which can not be resolved at this level of the litigation.