Brady, J.
INTRODUCTION
Plaintiff Eugene T. Lane, Jr. filed the present action against Memorial Press, Inc. seeking damages for injury to reputation and emotional distress suffered as the result of a July 20, 1995 newspaper article entitled, “Firefighter steals hydrant water.” This matter is before the court on the defendants’ second motion for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, the defendants’ motion is ALLOWED.
BACKGROUND
The undisputed facts as revealed by the summary judgment record are as follows. Plaintiff Eugene T. Lane, Jr. (Lane) is a full-time firefighter for the Town of Plymouth and the son of the Chairman of the Board of Selectmen, Eugene Lane. Lane and his brother Francis run Lane Brothers Lawn Care, a hydroseeding *469 and landscaping business. The Town of Plymouth (the Town) is governed in part by a representative town meeting of approximately 104 elected members, eight from each of thirteen voting precincts. Each elected representative serves a term of three years. The representative town meeting does not participate in the development of public policy, a task that is undertaken by the Board of Selectmen,[2] Town Manager, Finance Committee and various department heads. Pursuant to Chapter 2, section 2 of the Plymouth Town Charter, the duties of the representative town meeting are to exercise all legislative powers of the Town, consider and act upon all proposed bylaws, and consider and act upon all proposed operating and capital improvement budgets, bond issues and all other financial proposals of the Town. The Town’s annual budget for fiscal year 1996 was approximately $80 million.
Lane is an elected town meeting representative from Precinct 6 and as such, is one of eight town meeting members representing its approximately 3,500 constituents.[3] As a town meeting representative, Lane serves without compensation and does not receive any monetary allowance for expenses incurred in the performance of his duties. At the election on May 14, 1994, Lane was elected a Precinct 6 representative by 345 votes. When running for election as a town meeting representative, Lane did not solicit nomination signatures from the general public, actively campaign, raise funds or publish position papers. In his six years as a town meeting representative, Lane has only spoken at the Town Meeting on a handful of occasions and has never submitted written proposals or amendments.
Defendant Memorial Press, Inc. (MPI) publishes a weekly newspaper, The Old Colony Memorial, which is distributed in Plymouth, Carver and Kingston, Massachusetts. Defendant Mark Pothier is the executive editor of the newspaper, defendant Nan Anastasia is its managing editor and defendant Phyllis J. Hughes is its president and publisher. On July 20, 1995, MPI published an article on the front page of the Old Colony Memorial by reporter Charles Mathewson (Mathewson) entitled, “Firefighter steals hydrant water. Selectman’s son calls newspaper story slander.” The article stated that on July 9, 1995, two individuals observed Lane filling the 500-gallon tank of his hydroseeding truck with water from a public fire hydrant located on Bellview Drive. The article reported that Lane denied stealing water, stating that he filled his truck at his house and had not been hydroseeding on the morning of July 9. However, the article reported that Lane’s residential water bill showed water usage too small to support a hydroseeding business. The article further reported that according to the Town Water Superintendent, Lane did not have a permit to use the hydrant on July 9, but several days later, Lane applied for and received a hydrant-use permit from the Department of Public Works. Finally, the article quoted Lane as stating, “If my name is in there it’s slanderous. I’ll own you, your newspaper, and everything you own.”
In April of 1987, Lane’s brother Francis had received written permission from the Water Superintendent of the Plymouth Department of Public Works to use hydrants in various locations throughout the town for the purpose of hydroseeding. Francis again received written permission for hydrant use in April of 1988. Thereafter, neither Lane nor his brother received any further permission from the Town to use its hydrants until July of 1995 when, following the article in the Old Colony Memorial, Lane applied for and received a hydrant-use permit from the Water Superintendent. Although he had used town fire hydrants to fill his truck since 1987, Lane never kept track of his water usage and was not billed by the Town for such usage until 1996. Lane sometimes filled his hydroseeding truck at his residence. However, the water meter on his house was broken when he moved in and he received bills based on only estimated water usage, charging him the minimum residential basis of 4,000 gallons each six months. Lane had his water meter repaired approximately a week after the publication of the article in July of 1995.
In preparing the article about Lane over the course of ten days, Mathewson spoke to both eyewitnesses; interviewed the Plymouth Water Superintendent, who stated that Lane did not have a permit; spoke to the wife of the developer, who identified Lane as the hydroseeder at the property at issue; interviewed Lane twice; and reviewed Lane’s home water billings. Publication of the article was delayed for a week to allow further fact-checking.
On October 2, 1996, Lane filed the present action against MPI and the individual defendants alleging libel in Count I and infliction of emotional distress in Count II. His wife, Allison Lane, alleged infliction of emotional harm in Count III. On April 4, 1997, this Court (DelVecchio, J.) allowed a motion to dismiss Count III of the complaint. Thereafter, in December of 1997, the parties filed cross-motions for summary judgment on the remaining claims. In a Memorandum of Decision and Order dated December 9, 1997, this Court (Connon, J.) denied the parties’ cross-motions for summary judgment on the issue of whether Lane is a public official for purposes of his defamation claim, because the record contained insufficient evidence with respect to his duties and level of participation in public issues as a town meeting representative.[4] In addition, the Court granted Lane’s motion for summary judgment on the ground that he is not a public figure, as a matter of law. Finally, the Court denied Lane’s motion for a declaration that the article is defamatory per se.
The defendants now move for summary judgment on the ground that Lane is a public official and has no reasonable expectation of proving that the article was published with actual malice. In his opposition, Lane *470 requests that a declaration enter that he is a private citizen for purposes of his defamation action.
DISCUSSION
Summary judgment is especially favored in defamation cases, because allowing a trial to take place in a meritless case “would put an unjustified and serious damper on freedom of expression. ” King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987), cert. den., 485 U.S. 962 (1988). Given that a suit for libel may impinge on the First Amendment guarantee of free speech, a plaintiff who is a public official may recover only upon proof that the defendant published the allegedly defamatory statement with actual malice. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); McAvoy v. Shufrin, 401 Mass. 593, 596 (1988). The rationale for this rule is that public officials by their roles have invited attention and comment, and enjoy greater access to the channels of effective communication, giving them a more realistic opportunity to counteract false statements, than do private individuals. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 859 (1975). The determination of whether an individual is a public official or a private person is a question of law for the court where the facts bearing thereon are undisputed by the parties. Shaari v. Harvard Student Agencies, Inc., 427 Mass. 129, 133 n.6 (1998); Stone v. Essex County Newspapers, Inc., 367 Mass. at 862.
The mere fact that a plaintiff is a government employee is not determinative, for employees in the lower ranks are not public officials for purposes of defamation. Stone v. Essex County Newspapers, Inc., 367 Mass. at 863. See, e.g., Tartaglia v. Townsend, 19 Mass.App.Ct. 693, 696 (1985) (concluding that an employee of the Brockton Water Department was not a public official); Lynch v. News Group Boston, Inc., 1 Mass. L. Rptr. No. 1, 10-11 (Sept. 13, 1993) (Lauriat, J.) (concluding that a state senate court officer was not a public official). Rather, a public official is one who has, or publicly appears to have, substantial responsibility for control of public affairs, such that the public has an independent interest in his qualifications and performance. Stone v. Essex County Newspapers, Inc., 367 Mass. at 863-64. A public official’s position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy. Id. at 864. Factors relevant to the determination include remuneration, duties, and participation in decisions on public issues. Id. at 865.
In the present case, Lane is one of 104 elected members constituting the representative town meeting, the legislative body of the Town of Plymouth. The fact that he is not compensated for this role, although relevant, is not dispositive of his status as a public official. While the Board of Selectmen, and not the town meeting, is primarily responsible for developing the Town’s public policy, town meeting representatives such as Lane clearly influence and control public policy insofar as their duties are to consider and act upon all proposed bylaws, operating and capital improvement budgets, bond issues and all other financial proposals affecting the Town. Lane argues that he is not a public official because he personally does not actively campaign, publish position papers, speak at town meetings, or submit written proposals or amendments. Nonetheless, regardless of whether Lane actively or only minimally participates as a town meeting representative, the critical fact is that his position is that of a local legislator bearing control over public affairs, one which invites public scrutiny and discussion of the person holding it. See Stone v. Essex County Newspapers, Inc., 367 Mass. at 863-64. Compare New York Times Co. v. Sullivan, 376 U.S. at 284 n.23 (concluding that a city commissioner was a public official); Mihalik v. Duprey, 11 Mass.App.Ct. 602, 608 (1981) (concluding that a school committee member was a public official); Fabrizio v. Quincy, 9 Mass.App.Ct. 733, 736 (1980) (concluding that an appointed member of a city board of assessors was a public official); Pircio v. Toland, 1998 WL 22074 (Mass. Super. 1998) (Sikora, J.) (concluding that an elected member of the city planning board was a public official); O’Neil v. Gilvey, 9 Mass. L. Rptr. 237, 1998 WL 792424 (Mass. Super. 1998) (Smith. J.) (concluding that a Boston City Councilor was a public official). See also Gouthro v. Gilgun, 12 Mass.App.Ct. 591, 593 (1981), rev. den., 385 Mass. 1101 (1982) (noting that the parties stipulated that a candidate for the position of city alderman was a public official). As a town meeting representative, Lane participates as a legislator in decisions on important local issues and thus, is a public official for purposes of his defamation action.[5]
Given that Lane is a public official, he can prevail on his defamation claim only upon proof by clear and convincing evidence that MPI published the allegedly defamatory article with actual malice. New York Times Co. v. Sullivan, 376 U.S. at 279-80; McAvoy v. Shufrin, 401 Mass. at 596. Clear and convincing proof requires evidence which induces in the mind of the factfinder a reasonable belief that the probability that the facts asserted are true is substantially greater than the probability that they are not. Callahan v. Westinghouse Broadcasting Co., Inc., 372 Mass. 582, 588 (1977); Stone v. Essex County Newspapers, Inc., 367 Mass. at 870.
Actual malice is proved by a showing that the allegedly defamatory statement was published with knowledge that it was false or reckless disregard of whether it was false. Milgroom v. News Group Boston, Inc., 412 Mass. 9, 11 (1992); Stone v. Essex County Newspapers, Inc., 367 Mass. at 867. There must be sufficient evidence to permit the conclusion that the defendant entertained serious doubts as to the truth of his publication. Milgroom v. News Group Boston, Inc., 412 Mass. at 11; Stone v. Essex County Newspa *471 pers, Inc., 367 Mass. at 867. The standard is a subjective one; however, since a defendant will rarely admit that he had serious doubts about the truth of his publication, a jury may infer malice from objective evidence. Milgroom v. News Group Boston, Inc., 412 Mass. at 11; Stone v. Essex County Newspapers, Inc., 367 Mass. at 868. Thus, for example, recklessness may be shown by evidence that a defendant published a statement without investigation or verification and with knowledge that the only information he had was hearsay. King v. Globe Newspaper Co., 400 Mass. at 721-22. Further, malice may be inferred where the allegations are so inherently improbable that only a reckless man would have put them into circulation, or where there are obvious reasons to doubt the veracity of an informant relied upon or the accuracy of his reports. King v. Globe Newspaper Co., 400 Mass. at 722; Lyons v. New Mass. Media, Inc., 390 Mass. 51, 57 (1983).
In the present case, Lane has no reasonable expectation of demonstrating by clear and convincing evidence that MPI published the article at issue with actual malice. The crux of the article was that Lane “stole” water for his hydroseeding business from a public hydrant: i.e., took it without permission and without paying for it. The undisputed evidence shows that in preparing the article over the course of ten days, reporter Mathewson verified with the eyewitnesses and others that Lane was indeed the individual seen taking water from the hydrant. Lane was informed by the Plymouth Water Superintendent that the Town had a permit process for the use of hydrants, that the process was not usually applied to hydroseeders, and that Lane did not have a permit to use the hydrants. The Superintendent never stated that Lane had permission from the Town to use the hydrants. Further, on several occasions Mathewson spoke to Lane, who did not claim to have permission to use the hydrants but rather, denied that he ever used hydrants to fill his truck and stated that he was elsewhere on the occasion in question. Ultimately, MPI delayed publication of the article for a week to allow further fact-checking. The summary judgment record thus reveals substantial investigation of the allegations prior to publication and contains no evidence that MPI published the article in reckless disregard of whether it was true or false. Accordingly, MPI is entitled to judgment as a matter of law on Count I of the complaint alleging libel.
Finally, MPI moves for judgment on Count n alleging infliction of emotional distress. Given that the summary judgment record does not support a claim for defamation, Lane’s claim for emotional distress based on the alleged defamation must similarly fail. In order to give “breathing space” to the freedoms protected by the First Amendment, public officials may not recover for the tort of intentional of emotional distress based on publication of an allegedly defamatory statement without showing that the publication was made with actual malice. Hustler Magazine v. Falwell, 485 U.S. 46, 56 (1988). Compare Correllas v. Viveiros, 410 Mass. 314, 324 (1991) (noting that protection from liability for defamation would be of little value if the defendant were subject to liability based under a different theory of tort).
In any event, Lane has no reasonable expectation of prevailing at trial on a claim for either intentional or negligent infliction of emotional distress. For intentional infliction, Lane must show that MPI intended to cause emotional distress or should have known that such distress was the likely result of its conduct; that MPI’s conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community; and that its conduct caused Lane to suffer emotional distress so severe that no reasonable person could be expected to endure it. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997); Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987). It is unlikely that the publication, without malice, of allegations concerning a public official could ever be deemed the type of extreme and outrageous conduct that gives rise to a cause of action for intentional infliction of emotional distress. Further, in the present case, the record is simply devoid of evidence that as a result of the article at issue, Lane suffered distress so severe that no reasonable person could be expected to endure it.
Finally, to sustain a cause of action for negligent infliction of emotional distress, Lane must prove that MPI was negligent, that its negligence caused him to suffer emotional distress, physical harm manifested by objective symptomatology, and that a reasonable person would have suffered emotional distress under the circumstances. Sullivan v. Boston Gas Co., 414 Mass. 129, 132 (1993); Payton v. Abbott Labs, 386 Mass. 540, 555-56 (1982). The present summary judgment record contains no evidence demonstrating that Lane experienced physical harm as a result of the alleged distress. Accordingly, MPI is entitled to judgment as a matter of law on Count II of the complaint alleging infliction of emotional distress.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ second motion for summary judgment be ALLOWED.

Pursuant to Chapter 3, section 2 of the Town Charter, the Board of Selectmen serves as the chief executive officer of the town.

In 1990, the total population of the Town of Plymouth was 48,329; each precinct thus contains approximately 3,717 residents.

The court concluded that Lane was not a public official based on either his role as a Town firefighter or the fact that he is the son of the Chairman of the Board of Selectmen.

Lane has introduced letters from the Commonwealth of Massachusetts Office of Campaign & Political Finance opining that the position of town meeting representative is not an "elective public office” within the meaning of section G.L.c. 55, §5A, which governs who can participate in a political action committee, and noting that c. 55, §18 specifically exempts town meeting representatives from campaign finance reporting requirements. That the office of town meeting representative is treated differently from other town-wide offices for purposes of the Campaign Finance Act does not preclude a determination that a town meeting representative is a public official for purposes of a defamation action, which implicates very different concerns.