WALTER J. McAVOY vs. RONALD C. SHUFRIN.

Middlesex. November 4, 1987. — January 27, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Libel and Slander. Unlawful Interference.*

In a defamation action in which the judge had ruled that the plaintiff was a public official, the defendant's motion for judgment notwithstanding the verdict was properly denied, where the jury were warranted in concluding that the defendant had published a false and defamatory statement imputing criminal conduct to the plaintiff and in also concluding, on clear and convincing evidence, that the defendant had published the statement with "actual malice." [596-600]

In an action for defamation and unlawful interference with advantageous relations in which the jury assessed damages "other than damages for emotional distress" on a proper finding of liability on the libel claim, it was unnecessary for this court to consider the defendant's argument on appeal that he was not liable on the claim for interference with advantageous relations because damages had not been proved. [600]

On a defendant's appeal from a finding that he violated G.L. c. 93A, § 11, by publishing with actual malice a defamatory statement concerning the plaintiff, an assertion that the statement constituted privileged speech was not considered, inasmuch as there was no applicable privilege to libel another with actual malice. [600]

No error appeared in a civil action in the judge's denying the defendant's motion under Mass. R. Civ. P. 52 (b) to amend the findings and judgment, where the proposed amended findings were repetitive, immaterial, or redundant. [600-601]

At the trial of a civil action, the judge's finding, on the defendant's counterclaim, that the plaintiff had not violated G. L. c. 93A, § 11, was not clearly erroneous. [601]


CIVIL ACTION commenced in the Superior Court Department on May 27, 1982.

The case was tried before *Gerald F. O'Neill, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Gary D. Buseck & Norman S. Hewey (Annette MacMillan & Patricia B. DeVellis* with them) for the defendant.

*Robert R. White* for the plaintiff.

LYNCH, J. This is an action for defamation, intentional interference with advantageous relations, emotional distress, and violation of G. L. c. 93A, § 11. The defendant counterclaimed, alleging intentional interference with advantageous relations, defamation and violation of G. L. c. 93A, § 11. Except for the c. 93A claim, the case was tried before a jury which found in favor of the plaintiff. In response to special questions, the jury assessed $5,000 in damages "other than damages for emotional distress" and no damages on the emotional distress claim. Judgment was accordingly entered for the plaintiff on the libel and intentional interference with advantageous relations claims in the amount of $5,000 plus interest. Judgment was entered for the defendant on the emotional distress claim.

The c. 93A claims were tried before a judge who found for the plaintiff and imposed double damages. The judge ordered entry of judgment in favor of the plaintiff, McAvoy, in the amount of $10,000, together with interest, costs and attorney's fees, and noted that the plaintiff was to have but one recovery. He also ordered dismissal of the defendant's counterclaims. The defendant appeals from the trial judge's denial of his motion for judgment notwithstanding the verdict, the judge's finding that the defendant had violated G. L. c. 93A, § 11, and the dismissal of his counterclaims. We affirm.

The judge made findings in the c. 93A case which were consistent with the jury verdict for the plaintiff. From the judge's findings and the evidence before the jury, the following facts appear: The plaintiff, a constable, does "capias" work in the Lowell District Court. "Capias" work consists of producing for examination in court judgment debtors who fail to appear voluntarily in response to a summons. The defendant is an attorney who provides "coverage" for other attorneys in debt collection matters. "Coverage" is a practice whereby law firms representing creditors may avoid the expense of sending an attorney to the capias session by retaining an attorney already present in the session to examine debtors for a nominal fee.

The present dispute arises out of a conflict between the constable and the covering attorney. The practice has developed that, unless a creditor's attorney has designated a particular covering attorney to examine the debtor at a capias session, it is up to the constable to choose an attorney. The defendant (Mr. Shufrin) claims that he explained to the plaintiff (McAvoy) that he was the authorized covering attorney for a number of out-of-town firms, but that McAvoy nonetheless refused to deal with him. Conflict escalated between the parties to the point where, according to the defendant, Constable McAvoy assigned cases on which the defendant was designated as covering attorney to other lawyers.

Mr. Shufrin approached the constable about this problem on two occasions. On the first, according to Mr. Shufrin, Constable McAvoy said, "Get away from me before I belt you." On the second occasion, the defendant claims, the plaintiff came toward the defendant with raised fist and said, "Get away from me before I punch you in the mouth."[1] Mr. Shufrin thereupon filled out an application for a criminal complaint against McAvoy. A show cause hearing was later held on the application, but no complaint was issued. Mr. Shufrin also wrote a letter to cities and towns in which Constable McAvoy was licensed to serve process, requesting that McAvoy's appointment be revoked.

Shortly thereafter, both the defendant and the plaintiff met separately with the presiding judge of the Lowell District Court. As a result of this meeting, the defendant testified that he believed everything was "smoothed over."

Some months later, however, Constable McAvoy assigned a number of capiases for which Mr. Shufrin believed he was the proper covering attorney to an attorney other than Mr. Shufrin. Mr. Shufrin protested and he and the other attorney eventually placed telephone calls from the courthouse lobby to the various attorneys for whom Mr. Shufrin claimed covering authority. The result of these calls was the transfer of a number of the cases back to Mr. Shufrin.

---

[1] The plaintiff stated at trial that he had never threatened the defendant.

In the aftermath of this latest conflict, Constable McAvoy advised attorneys and law firms for whom he worked that, if they used Mr. Shufrin for coverage, McAvoy would no longer serve capiases for them. For his part Mr. Shufrin then wrote a second letter to the cities and towns in which Constable McAvoy was licensed to serve process, stating in part: "On May 12, 1981, Constable McAvoy threatened me with physical harm in the Lowell District Court and I have filed a criminal complaint against him." It is by this sentence that the plaintiff claims to have been defamed.[2]

1. *The libel claim*. In reviewing the denial of a motion for judgment notwithstanding the verdict, we construe the evidence most favorably to the plaintiff and disregard that favorable to the defendant. *Cimino* v. *Milford Keg, Inc.,* 385 Mass. 323, 326 (1982). The verdict will be upheld if it may be determined that "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Miga* v. *Holyoke,* 398 Mass. 343, 348 (1986), quoting *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978).

These general standards of review are qualified somewhat in a defamation case. Since a suit for libel may impinge on the First Amendment guarantee of freedom of speech, the United States Supreme Court requires that, where the plaintiff is a public official, the plaintiff must prove that the defendant published the allegedly libelous statement with "actual malice," that is, with knowledge that the statement was false or with reckless disregard for its falsity. *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 279-280 (1964).

Since the trial judge ruled as a matter of law that the plaintiff was a public official,[3] the *New York Times* standard of "actual

---

[2] The defendant argues, and the plaintiff apparently concedes, that the gravamen of the plaintiff's libel claim was this sentence.

[3] Although we have some doubt that the office of constable in Massachusetts constitutes that of a "public official" within the meaning of *New York Times Co.* and its progeny, see *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 863-864 (1975), it appears that the plaintiff did not contest the judge's ruling at trial and does not do so on appeal, so we do not reach the issue here.

malice" applies. In reviewing a jury's verdict in a libel case, the Constitution requires that we " 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.' " *Bose Corp.* v. *Consumers Union of the U.S., Inc.,* 466 U.S. 485, 499, reh'g denied, 467 U.S. 1267 (1984), quoting *New York Times Co.* v. *Sullivan, supra* at 284-286. *Twohig* v. *Boston Herald-Traveler Corp.*, 362 Mass. 807, 809 & n.2 (1973). On the basis of this independent review, we must be satisfied that the record establishes "actual malice" by clear and convincing evidence. *Bose Corp.* v. *Consumers Union of the U.S., Inc., supra* at 502. *Twohig* v. *Boston Herald-Traveler Corp., supra* at 811. With these precepts in mind, we proceed to the questions before us.

The elements of a libel case are a false and defamatory written communication of and concerning the plaintiff. Restatement (Second) of Torts § 558 (1977). R.W. Bishop, Prima Facie Case — Proof and Defense § 1201 (3d ed. 1987). J.R. Nolan, Tort Law §§ 91 et seq. (1979). See *Lyman* v. *New England Newspaper Publishing Co.*, 286 Mass. 258, 260-263 (1934). Cf. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 853 (1975). While the plaintiff bears the burden of alleging the falsity of the libel, it is up to the defendant to prove truth as an affirmative defense. *Maloof* v. *Post Publishing Co.*, 306 Mass. 279, 280 (1940).[4] Imputation of criminal con-

---

[4] The defendant urges us to hold that since the plaintiff is a public official, the plaintiff ought to bear the risk of nonpersuasion as to the truth or falsity of the allegedly libelous statement. In support of this proposition, the defendant cites *Philadelphia Newspapers, Inc.* v. *Hepps,* 475 U.S. 767 (1986), which held that a private plaintiff suing a newspaper for libel on a matter of public concern bears the burden of proving falsity of the libelous statements. We need not consider whether the *Hepps* holding applies here because altering the burden of proof would not change the result of this case. Sufficient evidence existed to warrant the finding that Mr. Shufrin's statement that he had filed a criminal complaint was false. As to the statement that Constable McAvoy had threatened Mr. Shufrin, the jury were presented with a question of credibility: Mr. Shufrin claimed that McAvoy had threatened him; McAvoy claimed otherwise. The jury, as trier of fact, were entitled to choose to believe McAvoy rather than Mr. Shufrin, and this court is in no position to override that choice. Cf. *Bose Corp.* v. *Consumers*

duct is defamatory per se. *Jones* v. *Taibbi,* 400 Mass. 786, 792 (1987). *Stone* v. *Essex County Newspapers, Inc., supra.* *Lynch* v. *Lyons,* 303 Mass. 116, 118-119 (1939). We conclude that the jury were warranted in concluding that the defendant had libeled the plaintiff.

The evidence revealed that the defendant, Mr. Shufrin, sent a letter to various boards of selectmen indicating that Constable McAvoy had threatened him and also indicating that a criminal complaint had been lodged against McAvoy. The evidence, however, warranted the finding that McAvoy did not threaten Mr. Shufrin. Evidence also established that Mr. Shufrin had not filed a criminal complaint; rather he had made application for a complaint.[5] Thus there was sufficient evidence for the jury to conclude that Mr. Shufrin had published a false and defamatory statement of and concerning Constable McAvoy and, therefore, as to these elements of the claim, we are satisfied that the defendant's motion for judgment notwithstanding the verdict was properly denied.

As to the remaining element of actual malice, as noted above, we must make an independent review of the sufficiency of the evidence. *Twohig* v. *Boston Herald-Traveler Corp.,* 362 Mass. 807, 809 n.2 (1973). *Bose Corp* v. *Consumers Union,* 466 U.S. 485, 514 (1984). We find no error.

Actual malice exists where the defendant publishes the defamatory communication with knowledge that it was false or with reckless disregard for whether it was false or not. See

---

*Union,* 466 U.S. 485, 499-500 (1984). We note also that the trial judge instructed the jury that the plaintiff had the burden of proving falsity and the jury nonetheless found in the plaintiff's favor.

[5] Mr. Shufrin argues that a finding of falsity cannot turn on the difference between a complaint and an application for a complaint because such a distinction is merely "technical," citing *Joyce* v. *George W. Prescott Publishing Co.,* 348 Mass. 790 (1965); *Joyce* v. *Globe Newspaper Co.,* 355 Mass. 492 (1969). We disagree. A criminal complaint is issued by a judge or magistrate after hearing. G. L. c. 218, § 35A. An application for a complaint consists only of bare allegations without any subsequent judicial action. Thus an application lacks the critical judicial "endorsement" associated with the complaint itself. Such a distinction, far from being "technical," may mean a great deal in terms of an individual's reputation.

*New York Times Co.* v. *Sullivan, supra* at 279-280; *Stone* v. *Essex County Newspapers, Inc., supra* at 867; *Twohig* v. *Boston Herald-Traveler Corp., supra* at 809. The inquiry has been articulated as whether the defendant subjectively had knowledge of falsity or "in fact entertained serious doubts as to the truth of his publication." *Stone* v. *Essex County Newspapers, Inc., supra,* quoting *St. Amant* v. *Thompson,* 390 U.S. 727, 730-731 (1968). Nonetheless, "since it would perhaps be rare for a defendant . . . to admit to having had serious, unresolved doubts," the jury may reach their conclusion as to the defendant's subjective knowledge based on inferences from objective evidence. *Id.* at 868. *Lyons* v. *New Mass Media, Inc.,* 390 Mass. 51, 56-57 (1983). Thus the defendant cannot ensure a favorable verdict merely by testifying that he published under the subjective belief that the statements were true. *St. Amant* v. *Thompson, supra* at 732. *Lyons* v. *New Mass Media, Inc., supra* at 58.

Clear and convincing evidence exists which would permit the jury to infer that the defendant either knew that the information in his letter was false or entertained serious doubts as to its truth. Constable McAvoy testified that he had never threatened the defendant. As to whether the defendant knew or recklessly disregarded the fact that what he had filed was not a complaint, the jury were presented evidence that the defendant was an attorney, and that that he had knowledge that a show cause hearing was to follow his application. The evidence further showed that the defendant published the letter notwithstanding his testimony that some eight months prior to the publication, when he met with the presiding judge of the Lowell District Court, he believed that the situation was "smoothed over." Furthermore, while there was evidence that the defendant was present at the Lowell District Court on a weekly basis, there was no evidence that he attempted to investigate the status of his application during those times.

The above facts would well warrant a jury in concluding either that the defendant knew that the publication was false or that he entertained serious doubts as to its veracity. The jury were able to consider the defendant's demeanor and judge

his credibility. It appears that the jury simply did not believe what the defendant had to say. Even under the searching standard of review mandated by the Constitution, it is not for this court lightly to disturb such a conclusion. Cf. *Bose Corp.* v. *Consumers Union,* 466 U.S. 485, 499-500 (1984) (independent review of constitutional facts accords due deference to trial judge's opportunity to observe demeanor of witnesses). Therefore, we conclude that the trial judge's denial of the defendant's motion for judgment notwithstanding the verdict was proper both as to the element of "actual malice" and as to the other elements of the plaintiff's libel claim.

2. *The intentional interference with advantageous relations claim.* The defendant argues that the jury could not have found him liable for interference with advantageous relations because there was not proof of damages. Because we have concluded that the jury properly found liability on the libel claim, we need not address this argument, as it would not alter the result.

3. *The c. 93A claims.* The defendant asserts that the trial judge erred in finding him to have violated G. L. c. 93A, § 11 (1986 ed.). The defendant argues that his speech was privileged both under the First Amendment's petition clause and as "a communication by a member of the public, in connection with a matter which directly concern[s] him, to persons who had authority to deal with the subject . . .," quoting *Neitlich* v. *Peterson,* 15 Mass. App. Ct. 622, 623 n.4 (1983), citing *Wright* v. *Lothrop,* 149 Mass. 385, 390 (1889). We need not reach the question whether or not either privilege exists here because there is no applicable privilege to libel another with actual malice.[6]

4. *The defendant's counterclaims.* The defendant argues that the judge erred in denying his motion to amend findings and judgment under Mass. R. Civ. P. 52 (*b*), 365 Mass. 816 (1974), and in denying his counterclaim under G. L. c. 93A, § 11. We reject these arguments.

---

[6] As the parties do not contest the trial judge's ruling that G. L. c. 93A, § 11, applied to the dealings between them, we do not reach that issue here.

Upon review of the record, it is apparent to us that the amended findings requested by the defendant do little to amplify or expand the record. Rather, they appear to be either repetitive, immaterial, or an attempt by the defendant to gain a "second chance" at issues unsuccessfully argued below. Therefore, we conclude that there was no error in the trial judge's denial of the defendant's motion under rule 52 (*b*).

The defendant also argues generally that the judge erred in finding that Constable McAvoy had not violated G. L. c. 93A, § 11. There was no error. The judge found, and the record reflects, that McAvoy did not wrongfully interfere with Mr. Shufrin's rights of coverage. McAvoy did notify attorneys that, if they used Mr. Shufrin as their covering attorney, McAvoy would not serve capiases for them, but the judge determined that any lost business that resulted was brought about by Mr. Shufrin's "harassing tactics and letter writing which justified McAvoy's actions." We cannot say that the judge's findings were clearly erroneous. See Mass. R. Civ. P. 52 (*a*), 364 Mass. 816 (1974).

*Judgments affirmed.*