**William LeBEAU, et al, Plaintiffs,**

v.

**TOWN OF SPENCER, et al, Defendants.**

No. CIV. A. 98–40035–NMG.

United States District Court, D. Massachusetts.

Oct. 2, 2001.

Gary S. Brackett, Brackett & Lucas, Worcester, MA, for William Lebeau.

Daryl J. Lapp, Palmer & Dodge, Boston, MA, Peter E. Schwartz, Palmer & Dodge LLP, Boston, MA, for Town of Spencer.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On March 16, 1998, the plaintiffs brought this action against the Town of Spencer ("the Town") and the Town of Spencer Selectmen as individuals, alleging 1) violation of due process under 28 U.S.C. § 1983, 2) violation of due process under Mass. Gen. Laws C. 12 §§ 11H and 11I, 3) breach of contract, 4) libel and slander, 5) defamation and 6) intentional infliction of emotional distress. The plaintiffs also seek a declaratory judgment declaring the rights, duties, status and obligations of the defendants to the plaintiffs, and a writ of mandamus compelling the defendants to restore the plaintiffs to their rightful positions. Now pending before this Court is Defendants' motion for partial summary judgment (Docket No. 69). Defendant Selectman Hayes filed a separate motion for partial summary judgment (Docket No. 67), but incorporated the remaining defendants' motion for partial summary judgment therein.

## I. *Background*

The plaintiffs in this case are former employees of the Town of Spencer Police Department ("Department") some of whom served as part-time police officers and others of whom served as dispatchers. One plaintiff, John Desmarais, presently works for the Department on a full-time basis. The plaintiffs were hired in 1992 as a result of the Town's decision to replace full-time officers with part-time officers in order to cut costs. As part-time officers, the plaintiffs were paid at a lower rate than full-time officers and did not receive all fringe benefits. In March of 1997, the part-time officers demanded equal pay and benefits.

In December of 1996, following the arrest of a full-time officer on allegations of criminal misconduct, the Town of Spencer Board of Selectmen ("Selectmen") initiated an investigation of the Department using an outside law firm, Kopelman & Paige, and a private investigator, Edward Clark. The investigation culminated in the filing of "the Clark Report" which was mailed to each of the selectmen, Hayes, Hicks, Suter, Cloutier, and Shemeth in April of 1997.

After reviewing the Clark Report, each selectman individually communicated with Selectman William Shemeth or Attorney Everett Marder of Kopelman & Paige to discuss which accusations in the Report merited further investigation and disciplinary action. The selectmen never held a meeting of the board to discuss those particular issues.

In early May, 1997, due to the ongoing investigation, the Selectmen secured the assistance of the Massachusetts State Police in the day-to-day operations of the Department. The State Police refused to work alongside part-time police officers. The selectmen directed the part-time officers not to report for duty and ordered them to turn in their guns and badges on May 8, 1997. The plaintiffs allege that they were removed from their positions on that day, but the defendants claim that those officers, who were originally hired on an as-needed basis, were simply suspended temporarily pending the restructuring of the Department. In either case, the State Police remained at the Department for over one year, and the plaintiffs, who did not resign, were not recalled to work for more than two years.

The selectmen considered making the results of the investigation public but decided against it. Copies of the Clark Re-

port were, nonetheless, circulated to individuals within the Town and eventually to the media. On or about May 8, 1997, the selectmen announced to the media that they had removed the plaintiffs from duty due to the ongoing investigation of the Department. Thereafter, the media gave widespread coverage to the removal of the part-time officers and to the substitution of the State Police.

In the wake of the investigations, five of the plaintiffs resigned their positions as follows: 1) Von Meyer and Puchalski resigned on April 5, 1997, prior to the issuance of the Clark Report and prior to the scheduling of disciplinary hearings; 2) Astukiewicz, a dispatcher, resigned due to an increase in family obligations and a desire to further her education; and 3) Cloutier and Desmarais resigned after their disciplinary hearings had been scheduled but before those hearings occurred. Desmarais was later reinstated as a full-time employee of the Department. The remaining plaintiffs did not pursue new roles made available to them after the Department was restructured and failed to take the necessary steps for reinstatement.

## II. *Summary Judgment Standard*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only where the party opposing summary judgment provides evidence "such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists, summary judgment is appropriate.

## III. *Counts I and II: Violation of Due Process under 42 U.S.C. § 1983 Against the Selectmen and the Town*

The defendants move for partial summary judgment against six of the twelve plaintiffs on their claims that the Town and the individual selectmen violated their rights to due process guaranteed under the Fourteenth Amendment of the United States Constitution.

A cause of action exists under 42 U.S.C. § 1983 when an individual, acting under color of state law, deprives a person of federally assured rights. *See Camilo–Robles v. Hoyos,* 151 F.3d 1, 8 (1st Cir. 1998). To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that the allegedly unconstitutional action executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the municipality's officers or is pursuant to governmental custom. *See Berard v. Town of Millville,* 113 F.Supp.2d 197, 201 (D.Mass.2000).

## A. Due Process

The plaintiffs contend that the defendants deprived them of their property rights in their employment positions without due process of law. The defendants argue that the § 1983 claims made by six of the plaintiffs fail as a matter of law because five of them resigned voluntarily and one of them was afforded notice and a hearing.

Both parties agree that Plaintiff Astukiewicz voluntarily resigned and have stipulated that she should be dismissed as a plaintiff in this case.

■ A genuine issue of material fact exists as to whether the plaintiffs Cloutier, Desmarais, von Meyer, and Puchalski resigned voluntarily. Although their letters of resignation cited unrelated, personal reasons for retiring, they stated in their depositions that they believed their resignations were coerced.

■ An issue of fact also exists as to whether Plaintiff Robert Orne was deprived of his property right to employment without due process of law. Orne was removed on May 8, 1997 without a hearing when he was required to hand over his gun and badge. Several months later, he was officially terminated after a hearing at which a lawyer represented him. He admits that he was afforded due process at that hearing. However, a dispute exists as to whether Orne was actually terminated on May 8, 1997, and therefore a genuine issue exists as to whether he was afforded due process in connection with the termination of his employment.

## B. Qualified Immunity

The defendants argue, in the alternative, that the plaintiff's § 1983 claims must fail because the selectmen are entitled to qualified immunity.

■■ The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages as long as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *See Vargas–Badillo v. Diaz–Torres,* 114 F.3d 3, 4 (1st Cir.1997). Public officials can avoid liability under § 1983 by showing that:

> the federal law allegedly violated was not clearly established at the time of the alleged violation, or if, at summary judgment, there is no genuine dispute of material fact that would prevent a finding that the defendants' actions, with regard to applying or following such clearly established law, were objectively reasonable.

*Camilo–Robles v. Hoyos,* 151 F.3d 1, 8 (1st Cir.1998).

It is not disputed, and the defendants concede, that the plaintiffs had a property interest in their employment that is protected by the Fourteenth Amendment of the United States Constitution. *See Rosaly v. Ignacio,* 593 F.2d 145, 151 (1st Cir. 1979). Therefore, the issue is whether the defendants acted with objective legal reasonableness.

■ Here, there exists a genuine dispute of material fact that would prevent a finding that the defendants' conduct, in following the requirements of due process, was objectively reasonable. The defendants contend that they acted reasonably and in good faith in suspending the plaintiffs on May 8, 1997 without a hearing, in part, because they acted on the advice of counsel. They also argue that they did not consider the acts of May 8, 1997 to constitute termination of the plaintiffs' employment in that:

> when the State Police arrived, the duration of their stay was unknown [and the]

part-timers, who always had worked on an as-needed basis, were simply not being scheduled for work on an interim basis.

*Memorandum in Support of Defendants' Motion for Summary Judgment* at 7. The plaintiffs respond, and it is reasonable to infer, that their employment status was terminated on May 8, 1997 when they were required to turn in their guns and badges. None of the plaintiffs, save Desmarais, worked for the Department after that date.

Although the defendants sought the advice of counsel, a colorable argument can be made that their actions were not objectively reasonable. A home rule petition of the Town of Spencer as well as the Regulations of the Spencer Police Department clearly established the procedures to follow for suspending employees in a way that is consistent with their due process rights. The defendants did not comply with either of those regulations that provide for notice and a hearing. A genuine issue of material fact therefore exists as to the defendants' reasonableness and they are not entitled to qualified immunity.

### IV. *Count III: Violation of the Massachusetts Civil Rights Act ("MCRA")*

#### A. MCRA Claim Against the Selectmen Individually

The Massachusetts Civil Rights Act ("MCRA") provides a cause of action against any person or persons who "by threats, intimidation, or coercion" interferes:

> with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by

the constitution or laws of the Commonwealth.

M.G.L. c. 12, §§ 11H and 11I.

■ The defendants argue that the MCRA requires a plaintiff to show that the allegedly intimidating conduct rises to the level of "violence or threats of violence" or "actual or potential physical confrontations involving a threat of harm." Although many cases decided by the Supreme Judicial Court have involved actual or potential physical confrontations, it is settled that the MCRA also encompasses the application of "moral force" so as to constrain a person "to do against his will something he would not have done." *Murray v. City of Boston*, 1996 WL 728171, *2, 1996 U.S.App. LEXIS 33161, *7 (D.Mass.1996). Because the plaintiffs' evidence supports an inference of moral coercion, a genuine issue of fact exists as to whether the defendants violated the MCRA in their removal of the plaintiffs from their employment positions.

#### B. MCRA Claim Against the Town of Spencer

■ The parties agree that the MCRA does not apply to the actions of towns or municipalities. A municipality is not a "person" within the meaning of the MCRA. *See Howcroft v. City of Peabody*, 51 Mass.App.Ct. 573, 591–92, 747 N.E.2d 729 (2001). Therefore, summary judgment will be allowed with respect to the plaintiffs' MCRA claim against the Town of Spencer.

### V. *Count IV: Breach of Contract*

The parties have settled the breach of contract claim and agree to the dismissal of Count IV for breach of contract.

### VI. *Counts V and VI: Libel, Slander and Defamation*

■ The plaintiffs allege libel and slander in Count V and defamation in Count

VI. Libel and slander are not, however, distinct from defamation. Rather, they are two kinds of defamation. *See* 50 Am. Jur.2d Libel and Slander § 1. Libel is a defamatory statement that is written, *see McAvoy v. Shufrin*, 401 Mass. 593, 595, 518 N.E.2d 513 (1988), and slander is defamation through oral communication. *See Ellis v. Safety Ins. Co.*, 41 Mass.App.Ct. 630, 635, 672 N.E.2d 979 (1996). Accordingly, the plaintiffs' defamation claims will be consolidated into one count (Count V) for defamation, and Count VI will be dismissed.

 Defamation is the intentional or reckless publication, without privilege to do so, of a false statement of fact which causes damage to the plaintiff's reputation. *Correllas v. Viveiros*, 410 Mass. 314, 319, 572 N.E.2d 7 (1991). Under Massachusetts law, police officers are considered public figures for purposes of defamation. *See Rotkiewicz v. Sadowsky*, 431 Mass. 748, 752, 730 N.E.2d 282 (2000). Therefore, the plaintiffs must show by clear and convincing evidence that the defendants published the alleged defamatory statements with actual malice, that is, "with knowledge that the statement was false or with reckless disregard for its falsity." *McAvoy*, 401 Mass. at 596, 518 N.E.2d 513.

██ The defendants argue that the plaintiffs have failed to identify any false statements that were published by the defendants. Plaintiffs have demonstrated, however, that excerpts of the Clark Report were published by the local press. For example, the plaintiffs have submitted a copy of an article in the May 16, 1997 *Worcester Telegram & Gazette* that contains verbatim allegations from the Clark Report. There is also some evidence from which a reasonable jury could conclude that the allegations were published with actual knowledge of or reckless disregard for their falsity. Attorney Marder stated

that some of the allegations consisted of "hearsay and uncorroborated rumors."

The defendants also argue that the plaintiffs have failed to identify who published the defamatory statements. It is undisputed that 1) the only persons who initially possessed the Clark Report were the selectmen and their attorney, 2) the Clark Report was circulated within the community and 3) portions of it were published in the local newspapers. The plaintiffs are unable to identify which defendant, if any, released the report, but they have offered some evidence, albeit hearsay, that Selectman Hayes released the Report. Selectman Shemeth admitted in his deposition that he or Attorney Marder advised a local newspaper of the part-time officers' alleged misconduct. Finally, the defendants admit that Selectman Hicks discussed the Report with a local teenager. A reasonable jury could infer, based on the circumstantial evidence, that one of the defendants published the Clark Report.

## VII. *Count VII: Intentional Infliction of Emotional Distress*

 Under the Massachusetts law, a plaintiff alleging intentional infliction of emotional distress must prove:

(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Haddad v. Gonzalez*, 410 Mass. 855, 871, 576 N.E.2d 658 (1991). Conduct is extreme and outrageous if it goes "beyond all possible bounds of decency and is utterly intolerable in a civilized community." *Agis*

*v. Howard Johnson Co.,* 371 Mass. 140, 145, 355 N.E.2d 315 (1976). It is for the court to decide whether the defendant's conduct may be reasonably regarded as so extreme as to permit recovery. *See Caputo v. Boston Edison Co.,* 924 F.2d 11, 14 (1st Cir.1991).

■ The plaintiffs have failed to produce any evidence showing that the defendants engaged in conduct that rose to the level of extreme and outrageous under Massachusetts law. They contend (but only vaguely) that the defendants' actions of terminating their employment, allowing the State Police to take over the Department, releasing portions of the Clark Report and violating the Commonwealth's Open Meeting Law constituted, in the aggregate, extreme and outrageous conduct. Those actions do not, however, constitute extreme and outrageous conduct as that term is defined under Massachusetts law. Nor do they constitute behavior that is "utterly intolerable in a civilized society." *Agis,* 371 Mass. at 145, 355 N.E.2d 315; *see also Simon v. Solomon,* 385 Mass. 91, 93, 431 N.E.2d 556 (1982) (finding landlord's failure to prevent the continual flooding of raw sewage in tenant's apartment to be extreme and outrageous conduct); *see also Boyle v. Wenk,* 378 Mass. 592, 595, 392 N.E.2d 1053 (1979) (finding that it was reasonable for a jury to find that a private investigator's threatening harassment and stalking of the plaintiff constituted extreme and outrageous conduct).

Moreover, none of the plaintiffs has offered sufficient evidence from which to infer that he "suffered distress so severe that no reasonable person could be expected to endure it." *Lane v. Memorial Press, Inc.,* 2000 WL 559547, *5, 2000 Mass.Super. LEXIS 99, *17 (2000). Not one of the plaintiffs sought psychological counseling. The only compelling evidence of distress was produced by LeBeau. He states that the alleged defamation caused his children to be teased at school and that, as a result, his wife transferred them to another school district. Although such a result, if proved, is distressful, it does not rise to the level of harm required for intentional infliction of emotional distress under Massachusetts law. *See Simon,* 385 Mass. at 93, 431 N.E.2d 556 (plaintiff suffered distress so severe that she was unable to care for her children and sought psychiatric counseling); *see also Boyle,* 378 Mass. at 594, 392 N.E.2d 1053 (plaintiff suffered distress so severe that she hemorrhaged). In summary, the plaintiffs have failed to offer evidence from which a reasonable jury could find that the defendants' conduct constituted intentional infliction of emotional distress.

## ORDER

For the reasons set forth in the memorandum above:

1) defendants' motion for summary judgment against Plaintiff Jessica Astukiewicz (Docket No. 69) is ALLOWED;

2) defendants' motion for partial summary judgment against Plaintiffs Michael Cloutier, John Desmarais, Henry von L. Meyer, and Shawn Puchalski on Counts I and II is DENIED;

3) defendants' motion for partial summary judgment against the plaintiffs on Count III is, with respect to the Town of Spencer, ALLOWED, but is otherwise DENIED;

4) the parties' stipulation to dismiss Count IV is confirmed and Count IV is DISMISSED;

5) defendants' motion for partial summary judgment on Counts V and VI is DENIED;

6) plaintiffs' defamation claims are hereby consolidated in Count V and Count VI is dismissed; and

7) defendants' motion for partial summary judgment against the plaintiffs on Count VII is ALLOWED.

So ordered.