Thomas STEFANIK, Plaintiff

v.

TOWN OF HUNTINGTON,
et al, Defendants.

C.A. No. 07–30020–MAP.

United States District Court,
D. Massachusetts.

March 13, 2008.

Thomas Stefanik, Huntington, MA, pro se.

David S. Lawless, Nancy Frankel Pelletier, Robinson Donovan, P.C., Springfield, MA, Defendants.

### MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (Docket Nos. 10 & 16 )

PONSOR, District Judge.

This is a multi-count civil rights action against the Town of Huntington and three of its officials. On June 6, 2007, Defendants filed a Motion to Dismiss or for Summary Judgment (Dkt. No. 10), and on October 16, 2007, Chief Magistrate Judge Kenneth P. Neiman issued his Report and Recommendation, to the effect that the motion should be allowed and, moreover, that Plaintiff, based upon his history of vexatious litigation, should be prohibited from filing further lawsuits without prior approval of this court.

Objections to the Report and Recommendation were due within ten days, but on October 11, 2007 Plaintiff asked for an extension of ninety days. While not granting the full ninety days, the court granted Plaintiff a generous extension to December 31, 2007, upon condition that no other matters would be filed without prior written permission of this court.

Three days before the expiration of this extension, Plaintiff asked for an additional sixty days to file his objections. On January 2, 2008, the court gave Plaintiff the full period requested, up to February 29, 2008, upon two conditions: (1) that there would be no further extensions and (2) that Plaintiff would file no other matters without written permission of the court.

Despite the court's explicit admonition that no further extensions would be permitted, and the extension of nearly five months to submit any objections, Plaintiff on the very last day of the extension, February 29, 2008, filed a further motion to extend. This motion has been denied.

Having reviewed the substance of the Report and Recommendation, the court, upon *de novo* review, will adopt the Report and Recommendation and allow Defendants' Motion to Dismiss or for Summary Judgment for two reasons.

First, contrary to applicable procedural rules and contrary to the orders of this court, Plaintiff has failed to file any timely opposition to the Report and Recommendation.

Second, the Report and Recommendation is detailed and meritorious. It is unnecessary to re-tread the ground covered so meticulously by Judge Neiman. It is clear, as his memorandum demonstrates, that the individual defendants (to the extent that Plaintiff has articulated any constitutional claim against them) are immune from Plaintiff's constitutional claims, that the town is not liable based on any unconstitutional policy or custom, and that Plaintiff's state law claims lack any arguable legal or factual basis.

Based on the foregoing, the Report and Recommendation (Dkt. No. 16) is hereby ADOPTED and Defendants' Motion (Dkt. No. 10) is hereby ALLOWED. The clerk is ordered to enter judgment for Defendants. This case may now be closed.

It must be noted that in adopting Judge Neiman's Report and Recommendation, the court hereby also adopts his recom-

mendation with regard to the goverance of any further lawsuits by Plaintiff. This case represents at least the eighth lawsuit filed by Plaintiff, none of which has been successful. Based upon this, the court hereby issues the Standing Order appended to this memorandum as Appendix A, enjoining Plaintiff from filing any future lawsuits without first filing a written petition seeking leave to do so, and obtaining permission from the court before going forward.

It is So Ordered.

## STANDING ORDER

Thomas Stefanik is hereby enjoined as follows and is further warned that any failure to comply with the terms below will result in other appropriate orders against him as well as monetary penalties:

1. If Plaintiff wishes to file any additional papers in the District Court of Massachusetts, he shall first file a written petition seeking leave to do so. The petition must contain a copy of this Order, together with the papers sought to be filed, and a certification under oath that there is a good-faith basis for their filing. The Clerk of Court shall accept the documents, mark them received, and forward them, for action on the petition, to the district judge or magistrate judge of this division.

2. This Order applies to any additional papers, claims, cases, files, complaints or anything resembling such pleadings or documents, which Thomas Stefanik seeks to file.

3. A copy of this Order shall be distributed to each district judge and magistrate judge in this district.

IT IS SO ORDERED.

REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS MOTION TO DISMISS FOR SUMMARY JUDGMENT

NEIMAN, United States Chief Magistrate Judge.

Thomas Stefanik ("Plaintiff") brings this multi-count civil rights complaint against the Town of Huntington ("the Town") and three of its officials: the town clerk, Pamela Donovan–Hall ("Donovan–Hall"), and two assessors, Suzanne Killam ("Killam") and Al Lafrance ("Lafrance") (together "Defendants"). Defendants' motion to dismiss or for summary judgment on all of Plaintiff's claims, filed pursuant to Fed. R.Civ.P. 12(b)(6) and 56, has been referred to this court for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B).

Plaintiff is no stranger to litigation in this district, having filed seven previous actions in the Western Division, all without success.[1] Plaintiff's latest complaint alleges, in essence, that Defendants violated his constitutionally protected rights when they assessed his land as being "without a dwelling," failed to accept his declaration of estate of homestead, and failed to register him to vote. At its core, Plaintiff's

---

1. See *Stefanik v. Abrashkin, et al.,* 03cv30240–MAP (dismissed under 28 U.S.C. § 1915); *Stefanik v. Hampden County Comm'rs, et al.,* 98cv30133–MAP (defendants' motion for summary judgment allowed); *Stefanik v. Friendly Ice Cream,* 98cv30114–MAP (defendant's motion for summary judgment allowed; subsequent appeal dismissed for lack of prosecution); *Stefanik v. Nynex Corp., et al.,* 98cv30106–MAP (defendants' motion to dismiss allowed); *Stefanik v. Ashe, et al.,* 96cv30235–FHF (defendants' motion to dismiss allowed); *Stefanik v. Hampden County House of Correction, et al.,* 96cv30135–MAP (defendants' motion for summary judgment allowed). See also *Stefanik v. Reno, et al.,* 06cv30049–MAP (September 13, 2007 report and recommendation by the undersigned that defendants' motion for summary judgment be allowed).

claims rest on the assertion that he was, in fact, a resident of the Town and that the land he owns contained a taxable structure—a mobile home—which was his primary residence. Plaintiff's constitutional claims are asserted against both the Town, as a municipal entity, and the individuals, as town officials. Plaintiff also asserts state-law claims of negligence and intentional infliction of emotional distress.

As will be described, the court believes that the undisputed facts supplied by Defendants demonstrate three things: (1) that the individual defendants are qualifiedly immune from Plaintiff's constitutional claims, (2) that the Town itself is not liable for any unconstitutional "municipal policy or custom," and (3) that Plaintiff's state law claims for negligence and intentional infliction of emotional distress fail on their merits. Accordingly, the court will recommend that Defendants' motion, construed as a motion for summary judgment, be allowed. *The court will further recommend that Plaintiff be barred from filing any more lawsuits in this district without prior approval of the court.*

### I. STANDARD OF REVIEW

In ruling on either a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment, the court must "rehearse the facts in the light most favorable to the nonmoving party ... and draw all reasonable inferences in that party's favor." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 26 (1st Cir. 2004). There are, however, significant "differences between the ground rules that apply to motions to dismiss as opposed to motions for summary judgment," most notably, "the factual averments contained in the plaintiff's complaint supply the template for ... a Rule 12(b)(6) motion to dismiss" while "the evidence of record supplies the template for ... a Rule 56 motion for summary judgment." *Id.* (citing *Gar-*

*side v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990), and *Chongris v. Bd. of Appeals,* 811 F.2d 36, 37 (1st Cir.1987)). Since the parties here go beyond the complaint and cite other "record evidence," the court has chosen to consider Defendants' motion pursuant to Rule 56.

Summary judgment under Rule 56 is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the nonmoving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank,* 27 F.3d 746, 748 (1st Cir.1994). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### II. BACKGROUND

The following background is taken principally from Defendants' Local Rule 56.1 Statement of Material Facts not in Dispute (Document No. 12, hereinafter "Defs.' Facts"). Since Plaintiff has not disputed these facts, they are deemed admitted. *See* Rule 56.1, Local Rules of the United States District Court for the District of Massachusetts.

On September 10, 2001, the Town's board of assessors inspected Plaintiff's property. (Defs.' Facts ¶ 1.) The resulting assessment summary listed Plaintiff's land as "vacant" with $0 value, indicated that Plaintiff's mailing address was a post office box in Holyoke, Massachusetts, and included the following handwritten notation: "10 × 35 house trailer blue—has driven well—

not livable." (*Id.*) Similar information was noted on an appraisal summary dated October 16, 2003. (*Id.* ¶ 2.)

Nearly two and one-half years later, on January 26, 2004, Plaintiff left a voice-mail message for Donovan–Hall, the town clerk, stating that he would visit her office on January 28th for the purpose of obtaining her signature on a declaration of estate of homestead. (*Id.* ¶¶ 3, 4.)[2] Donovan–Hall, who had only assumed office on January 1, 2004, immediately researched the issue and surmised that there was no residence on Plaintiff's property and that Plaintiff was not registered to vote in town elections. (Defs.' Facts ¶ 5.) When Plaintiff appeared at Donovan–Hall's office on January 28th, she explained to him that she could not sign his declaration of estate of homestead without proof that he was a resident of the Town. (*Id.* ¶ 6.)

Later that day, Plaintiff wrote a letter to the chairperson of the Town's board of selectmen complaining that Donovan–Hall had refused to accept his declaration of estate of homestead. (*Id.* ¶ 7.) Plaintiff further asserted that the chief of police had actually accepted his declaration on behalf of the Town and that he hoped he would not be required "to present the Town Clerk with a presentment of claim notice." (*Id.*) The next day, Donovan–Hall returned Plaintiff's declaration of estate of homestead "until such time [as Plaintiff could] prove [his] legal residence in the Town." (*Id.* ¶ 8.)

On February 4, 2004, Plaintiff wrote a letter to the board of assessors asking them to "revaluate [sic] my property so I can qualify for homestead." (*Id.* ¶ 9.) By letter dated March 27, 2004, the board of assessors responded by informing Plaintiff that they did "not have any information indicating that there is a residence on [his] property," that his "trailer appeared to be just a shell with no water or septic system connections" and that they had "contacted the Huntington Board of Health and requested an inspection to determine if there is a legal residence on [his] property at which point [they would] adjust the values of the property to reflect the presence of a residence." (*Id.* ¶ 10.)

On May 4, 2004, the Town's building commissioner reported that he had issued Plaintiff a building permit but that a certificate of occupancy had not yet been issued. (*Id.* ¶ 11.) Shortly thereafter, on May 11, 2004, the board of assessors conducted a new inspection. (*Id.* ¶ 12.) The subsequent appraisal summary stated as follows: "This Parcel contains 2.1 ACRES of land mainly classified as Mobil [sic] H with a(n) Mobile HM Building Built about 2004." (*Id.*) The summary went on to list a building value of $15,600. (*Id.*)

Four and one-half months later, on September 27, 2004, Plaintiff presented Donovan–Hall with an official voter registration form. (*Id.* ¶ 13.) The form was incomplete, however, in that Plaintiff failed to indicate his present address. (*Id.*)

Over seven months later, on May 3, 2005, Plaintiff presented Donovan–Hall with a second voter registration form. (*Id.* ¶ 14.) She did not process that form, however, because, as she indicated in a letter to Plaintiff dated May 9, 2005, he again had provided no proof of residence and the board of health had not yet confirmed that his property contained a habitable dwelling. (*Id.* ¶¶ 14, 15.)

---

**2.** As Defendants note, it appears that Plaintiff was attempting to invoke the following provision of Massachusetts' General Laws: "To acquire a claim of homestead in a manufactured home, the fact that it is designated to be held as such shall be set forth in a writing duly signed, sealed and acknowledged and filed at the City or Town Clerk's office in the city or town in which the manufactured home is located." Mass. Gen. L. ch. 188, § 2.

Many months later, in February of 2006, Plaintiff left a voice-mail message for Donovan–Hall in which he stated that, as a "homeless" person, he was entitled to "hang his hat on any tree and call it home." (*Id.* ¶ 16.) Based on Plaintiff's representation of homelessness, Donovan–Hall then registered Plaintiff as a town voter effective March 1, 2006. (*Id.*)

Plaintiff filed the instant action on February 7, 2007. His complaint contains five counts. Count 1 appears to be a constitutional claim leveled against all Defendants for "compensatory damages." Count 2 alleges that the Town unconstitutionally failed to "train and supervise" its employees. Count 3 asserts that Donovan–Hall, Killam and Lafrance deprived Plaintiff of his "right to vote." Count 4 simply alleges "negligence." And Count 5 asserts that Donovan–Hall, Killam and Lafrance are liable for the intentional infliction of emotional distress.

### III. DISCUSSION

Defendants' motion pursues many arguments, many of which Plaintiff has ignored. As will be described, the court believes that a combination of three of those arguments warrant the entry of summary judgment, *in toto*, in Defendants' favor: (1) that the individual defendants are qualifiedly immune from Plaintiff's constitutional claims, (2) that the Town itself is not liable for any unconstitutional "municipal policy or custom," and (3) that Plaintiff's state law claims for negligence and intentional infliction of emotional distress fail on their merits.[3] The court will further recommend that Plaintiff be barred from filing any more lawsuits in this district without prior approval of the court.

### A. Qualified Immunity

As this court recently informed Plaintiff in another case, *Stefanik v. Reno* (see n. 1), "[g]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citations omitted). According to the First Circuit, courts generally employ a three-pronged test to determine whether qualified immunity applies. *See Jennings v. Jones*, 499 F.3d 2, 10–11 (1st Cir.2007) (*en banc*). In particular, the court must inquire:

> (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right.

*Id.* (citations and quotation marks omitted).

In the case at bar, Defendants persuasively argue that Donovan–Hall is qualifiedly immune from Plaintiff's constitutional claims. Thus, even assuming that Plaintiff has articulated the deprivation of a clearly established constitutional right (*e.g.*, the right to vote), he offers no rebuttal to Defendants' assertion that a reasonable town clerk would *not* have believed

---

**3.** Defendants spend great energy arguing, alternatively, that they are entitled to summary judgment on statute of limitations grounds. (See Defs.' Brief at 3–6.) Since, in this court's estimation, Defendants' other arguments will dispose of the entire case, the statute of limitations argument remains unaddressed.

that her actions violated that right. *Cf.* 29 C.J.S. *Elections* § 32 (2007) (noting that government officials employ a variety of ways to ensure that individuals are not "circumventing the election laws" with regard to their residences) (citing cases). Nor does Plaintiff even hint how Killam and Lafrance may somehow be connected to the purported denial of the right to vote other than implying that they were the ones who initially assessed his land. Indeed, Plaintiff says absolutely *nothing* in response to Defendants' qualified immunity argument. For these reasons, the court will recommend that summary judgment enter in the individual defendants' favor on the constitutional claims asserted against them (Counts 1 and 3).

### B. *Municipal Policy or Custom*

 Similarly, the court will recommend that summary judgment enter in the *Town's* favor on the constitutional claims asserted against it (Counts 1 and 2). It is well-established that, for a plaintiff to maintain a constitutional action against a municipality, he must allege that his civil rights were violated as the result of an official "policy or custom." *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This *"Monell"* showing is two-fold. First, the plaintiff "must identify a municipal 'policy' or a 'custom' that caused [his] injury." *Silva v. Worden,* 130 F.3d 26, 30–31 (1st Cir.1997) (citing *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Pembaur v. Cincinnati,* 475 U.S. 469, 479–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); and *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). Second, the disputed "policy" or "custom" must "be the cause and moving force behind the deprivation of constitutional rights." *Silva,* 130 F.3d at 31 (citing *Bryan County Comm'rs,* 520 U.S. at 404, 117 S.Ct. 1382).

Plaintiff has made neither showing here. At most, Plaintiff asserts that "Board of Health inspections is [sic] not required to vote in town elections" and that "failure to train" can "establish a municipal policy or custom subject to liability" (Document No. 15 (hereinafter "Pl.'s Brief") at [3–4] [4]), but offers no factual or legal support for these vague statements. To be sure, Plaintiff appears to rely on the affidavits of a business associate (June Massee) and a neighbor (Jean Baillargeon) to prove the existence of an unconstitutional municipal policy. (See *id.,* Exs. 14, 15.) There is, however, nothing in these two statements bearing on the *Monell* issue. Accordingly, the court concludes that the Town, like the individual defendants, is entitled to summary judgment with respect to the constitutional claims asserted against it (Counts 1 and 2).

### C. *State Law Claims*

Should the recommendation for summary judgment in Defendants' favor on Plaintiff's constitutional claims be adopted, the court would be free to decline supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c). Because these pendent claims clearly raise no genuine issues of material fact, however, this court, as in *Reno* (see Sep. 13, 2007 report and recommendation), believes that supplemental jurisdiction should be exercised, if for no other reason than judicial economy.

First, as to negligence, Plaintiff fails to address Defendants' well-articulated (and eminently correct) argument: that negligence claims against municipalities based on officials acting within the scope of their

---

**4.** Page references to Plaintiff's Brief are in brackets as he includes none.

employment must be brought pursuant to Mass. Gen. L. ch. 258; that there can be no dispute that Donovan–Hall, Killam and Lafrance were acting within the scope of their employment and, hence, are immune from negligence liability; and that Plaintiff has failed to specify the negligent acts by the Town which he claims might conceivably fall within the purview of chapter 258. Indeed, nowhere in his opposition does Plaintiff even mention the word "negligence." Rather, his focus is exclusively on his constitutional claims. Accordingly, the court deems Plaintiff's negligence claim abandoned and, hence, will recommend that summary judgment enter in Defendants' favor with respect to Count 4.

 Second, as to intentional infliction of emotional distress, Defendants ably argue that that tort does not apply here. As this court recently informed Plaintiff in *Reno* (see Sep. 13, 2007 report and recommendation), to prove intentional infliction of emotional distress, he must show:

> "(1) that the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."

*LeBeau v. Town of Spencer*, 167 F.Supp.2d 449, 456 (D.Mass.2001) (quoting *Haddad v. Gonzalez*, 410 Mass. 855, 576 N.E.2d 658, 667 (1991)). Even when looked at in a light most favorable to Plaintiff, the facts in no way indicate that any defendant engaged in "extreme and outrageous" conduct. *See id.* at 456–57 ("Conduct is extreme and outrageous if it goes 'beyond all possible bounds of decency and is utterly intolerable in a civilized community.' ") (quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315, 319 (1976)). In addition, Plaintiff offers no evidence that he sustained severe emotional distress or that Defendants acted with the intention of inflicting such distress. Once again, therefore, Plaintiff has simply abandoned this cause of action. Accordingly, the court will recommend that summary judgment enter in Defendants' favor on Count 5.

### D. *Future Lawsuits*

 In recommending that complete summary judgment should enter in Defendants' favor, the court has been careful to review Plaintiff's allegations liberally insofar as they are made by a *pro se* complainant. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, as indicated, there is absolutely nothing in Plaintiff's causes of action justifying them being brought in this federal court, let alone in any other forum. Moreover, the court deems this to be one of the rare instances where it will recommend that Plaintiff be barred from filing any further complaints in the District Court of Massachusetts without receiving the prior consent of the district judge or magistrate judge in the western division.

In making this particular recommendation, the court notes that Plaintiff has filed numerous vitriolic complaints in recent years, none of which have met with any success. (See n. 1.) Unfortunately, these complaints, usually meritless, demand untold hours of effort on the part of the court and those unfortunate enough to be caught in Plaintiff's sights. The instant matter is more of the same; it includes harsh allegations which Plaintiff abandons only after significant resources have been expended by Defendants and the court. Plaintiff's papers also incorporate a significant amount of immaterial information includ-

ing, unfortunately, a glimpse into his mental state.[5]

The court also notes that Plaintiff's papers reveal a blatant misrepresentation, in either this case or in *Reno*, which appears to serve his cause *du jour.* In *Reno*, Plaintiff contended that "at all times . . . since 1/1/96" he was a "tenant at 123 Pine Street" in Holyoke. *Stefanik v. Reno, et al.,* 06cv30049–MAP, at 3 (Sep. 13, 2007 report and recommendation). In the instant case, however, Plaintiff "alleges to be a resident of Huntington, Massachusetts from 1984 to 2007 up to present date uninterrupted." (Complaint ¶ 1.) The court is particularly concerned with this obvious contradiction since residency goes to the heart of the instant matter. Needless to say, Plaintiff cannot have it both ways and ought not be allowed play "fast and loose" with the court whenever it suits his purpose. *See InterGen N.V. v. Grina,* 344 F.3d 134, 144 (1st Cir.2003) ("[T]he doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding. The doctrine is designed to ensure that parties proceed in a fair and aboveboard manner, without making improper use of the court system.") (citations and internal quotation marks omitted).

A district court has the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation. *See Elbery v. Louison,* 201 F.3d 427, 1999 WL 1295871, at *2 (1st Cir. Dec.17, 1999) (per curiam) (citing *Cok v. Family Court of Rhode Island,* 985 F.2d 32, 34 (1st Cir. 1993)). *See also O'Connor v. Northshore Int'l, et al.,* 03cv101 52–DPW (dismissed under 28 U.S.C. § 1915(e)(2)), *aff'd,* No. 03–1601 (1st Cir. Oct. 15, 2003); 28 U.S.C. § 1651 (courts may issue all writs necessary or appropriate in aid of their respective jurisdictions). That power has been specifically recognized by this court. *See Budnick v. Blair, et al.,* 05cv30058–MAP (standing order issued against repeat civil litigant) (Ponsor, D.J.). *See also Azubuko v. MBNA America Bank,* 396 F.Supp.2d 1, 7 (D.Mass.2005) ("[A] district court has the power to enjoin a party from filing frivolous and vexatious lawsuits.") (Keeton, D.J.); *Jones v. Social Sec'y Admin.,* 2004 WL 2915290, at *5 (Dec. 14, 2004) (issuing injunction barring plaintiff from filing future suits without prior leave of court) (Woodlock, D.J.).

Here, Plaintiff's repeated filings of factually and legally deficient complaints, his reliance on wholly irrelevant material, and his calculated misrepresentation of key facts have proven to be a burden on the court's time and resources and, in this court's opinion, constitute an abuse of the administrative process of justice. Thus, in the court's view, the issuance of an order to the Clerk of this Court that she not file documents presented to the Clerk by Plaintiff absent leave is warranted. *See Castro v. United States,* 775 F.2d 399, 408 (1st Cir.1985) (per curiam) ("[I]n extreme circumstances involving groundless encroachment upon the limited time and resources of the court and other parties, an injunction barring a party from filing and

---

**5.** For example, in his opposition memorandum, Plaintiff cites irrelevant municipal by-laws, state environmental protection regulations and federal "HUD" requirements. (See Pl.'s Brief at [4].) He also attaches various tangential documents, including a Social Security Disability Insurance ruling in which an administrative law judge found that he "has

an antisocial and paranoid personality disorder," noted doctors who had diagnosed him with "paranoid schizophrenia," and concluded that he is "markedly limited in his ability . . . to get along with [others] without . . . exhibiting behavioral extremes." (See *id.,* Ex. 13.)

processing frivolous and vexatious lawsuits may be appropriate."); *accord Gordon v. United States Dep't of Justice,* 558 F.2d 618, 618 (1st Cir.1977) (per curiam) (same); *Pavilonis v. King,* 626 F.2d 1075, 1078 (1st Cir.1980) (same). The court will so recommend.

### IV. CONCLUSION

For the reasons stated, the court recommends that Defendants' motion to dismiss or for summary judgment, construed as a motion for summary judgment, be ALLOWED. The court also recommends that an order in the form appended be issued so as to forestall any further waste of this court's time.[6]

Oct. 3, 2007.

**6.** Plaintiff is advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed finds or recommendations to which objection is made and the basis for such objection. Plaintiff is further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1 st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).